UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

ANGELA MARIE MCCOY, )
)
Plaintiff, )       Civil Action No. 7: 20-052-DCR
)
V. )
)
ANDREW SAUL, Commissioner of )       **MEMORANDUM OPINION**
Social Security, )       **AND ORDER**
)
Defendant. )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Angela McCoy filed this action to challenge the denial of her application for Social Security benefits.  Thereafter, the parties filed cross-motions for summary judgment. [Record Nos. 19 and 22]  McCoy presents two main arguments.  She asserts that: (1) the ALJ assigned to her case improperly accepted the vocational expert's testimony; and (2) the ALJ's decision "failed to include mental limitations the ALJ accepted as credible."  [Record No. 19-1, p. 1]   However, following a full review of the record, the Court concludes that the Commissioner's decision is supported by substantial evidence.  The Commissioner's motion for summary judgment will be granted and the relief sought by the plaintiff will be denied.

## I. PROCEDURAL HISTORY

McCoy filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and an application for supplemental security income ("SSI") under Title XVI of the Act on August 16, 2016.  [*See* Transcript, hereinafter "Tr.", 190–91; 209–15.]  She alleged a disability onset date of April 10, 2015, but later amended the

- 1 -

date to October 18, 2016.  [Tr. 190, 209, 229]  After McCoy's applications were denied initially

[Tr. 36, 69] and on reconsideration [Tr. 71, 70], an administrative hearing was requested and

held on December 17, 2018, before ALJ Maria Hodges.  [*See* Hearing Transcript, hereinafter

"Hr'g Tr.", 1900–28.]  A written decision denying benefits was issued on January 14, 2019.

[Tr. 13–34]  The ruling became the Commissioner's final decision when the Appeals Council

denied McCoy's request for review on February 27, 2020.  [Tr. 1–6]  The matter is ripe for

judicial review under 42 U.S.C. § 405(g).

## II.  STATEMENT OF FACTS

McCoy was 52 years old at the time of her administrative hearing.  [Hr'g Tr. 1905]  She

has an eleventh-grade education and no vocational training.  [Hr'g Tr. 1905]  McCoy testified

that she had previously worked as a cashier, a substitute custodian, a medical records prepper,

an automotive assembler, and a drill press operator.  [Hr'g Tr. 1906–09]

When asked why she felt she was unable to work, she described neck pain, severe

headaches, Barrett's esophagus, and a lack of strength in her right hand.  [Hr'g Tr. 1910–11]

She also cited problems with the right side of her stomach and pain in her left foot.  [Hr'g Tr.

1911]  McCoy's left foot pain—the result of two surgeries and a plate and screws in her great

toe—causes difficulty walking and standing.  [Hr'g Tr. 1911]  McCoy also testified that she

has anxiety and depression, resulting in a dislike of being around others and "crying spells."

[Hr'g Tr. 1912]

McCoy indicated that the pain in her neck runs down her right arm into her right hand.

[Hr'g Tr. 1912–13]  This also causes "numbness and tingling" in her right thumb and middle

finger and prevents her from performing activities such as brushing her hair, opening jars, or

peeling potatoes.  [Hr'g Tr. 1913–14]   She testified that she can walk and stand for about ten minutes at a time, does not drive, and no longer works in her yard.  [Hr'g Tr. 1915–16]  At the time of the administrative hearing, McCoy lived with her daughter, who assisted her with shopping and other household tasks.  [Hr'g Tr. 1918]

In addition to her physical issues, McCoy testified that her mental health issues affect her ability to work.   She pointed to numerous personal tragedies when describing her depression and frequent crying spells.  [Hr'g Tr. 1917, 1920]  McCoy testified that she feels like her independence is gone and that she regularly sees a mental health professional.  [Hr'g Tr. 1920–21]

McCoy supported her allegations with a third-party function report prepared by her mother in September 2016.  [Tr. 283]  According to her mother, left foot pain causes difficulty standing, and neck and right arm pain causes difficulty lifting.  [Tr. 284]  In addition to pain and headaches, these limitations lead McCoy to sit on couch or at her table all day, while in the past she could do most household.  [Tr. 285]  And while McCoy is able to do laundry two times per week, she no longer cooks, peels potatoes, or uses a can opener, and primarily makes frozen dinners.  [Tr. 286]  Additionally, McCoy is unable to do yard work or go outside due to pain and only leaves the house to go shopping for groceries or prescriptions.  [Tr. 287–88]

McCoy first reported problems with her right hand and arm to emergency room doctors in 2014.  [Tr. 415]  Kaveh R. Sajadi, MD, diagnosed McCoy with right cubital tunnel syndrome in November 2014, and Devesh Sharma, MD, diagnosed her with right carpal tunnel syndrome in April 2016.  [Tr. 436, 445]  Both diagnoses came after she reported right arm pain, especially after extended use.  [Tr. 429, 443]  Following a November 2016 evaluation, consultative

physician William E. Waltrip, MD, opined that McCoy "has good strength of grip and could perform fine and gross manipulations." [Tr. 477]  She continued to be diagnosed with carpal tunnel syndrome in 2018.  [Tr. 1230–31]

Additionally, in August 2016, results from an X-ray showed degenerative joint disease in McCoy's left foot.  [Tr. 449]  In his consultative examination, Waltrip determined that McCoy was "very minimally limited in her ability to walk, stand, or sit" and that she "walk[ed] with a normal gait," but could not "walk on her tip of her toes or her heels."  [Tr. 477]

Sofie Pinney, DPM, recommended surgery for the treatment of McCoy's foot.  [Tr. 628]  A "fusion procedure with plate and screws bridging the [metatarsophalangeal] joint of the great toe" was performed in January 2017. [Tr. 683]  Pieces of that hardware were removed and a joint arthrodesis was performed in May 2018.  [Tr. 1320–21]   And in August 2018, McCoy received multiple injections in her heels.  [Tr. 1685–87]  She again sought treatment for left foot pain in November 2018.  At that time, Matthew Q. McCammon, MD, determined that she had a normal gait, mild effusion, mild swelling, and tenderness at the surgical incision site.  [Tr. 1892, 1896]

McCoy also suffers from neck pain and headaches.   Waltrip's November 2016 consultative exam confirmed that she experienced "neck pain with radiculopathy in right upper extremity." [Tr. 477]   A December 2016 MRI revealed degenerative disk disease with diffuse disk bulge, specifically at cervical spinal nerves 5 and 6 (C5–C6). [Tr. 520–21] An additional MRI in February 2018 confirmed that these conditions persisted.  [Tr. 1234]

McCoy stated in a September 2016 questionnaire that her neck pain causes her headaches. [Tr. 297]  She indicated that, for her severe headaches, "[i]t'll start hurting in my

neck, then will proceed to my head." [Tr. 297]  In a signed statement supporting McCoy's questionnaire, McCoy's daughter confirmed that the claimant's headaches—which last 90 to 120 minutes—are caused by severe neck pain, preventing her from engaging in daily activities, and causing McCoy to become sore and tired. [Tr. 300]  McCoy was diagnosed with migraine headaches in September 2016, [Tr. 495], and she began taking Topamax to treat her headaches in February 2018. [Tr. 1772]

P. Saranga, MD, a state agency physician, reviewed McCoy's medical records at the reconsideration stage and determined that she was capable of performing some light work. [Tr. 85]  He also determined that McCoy's "alleged limitations are partially consistent [with the evidence] as her symptoms would produce some difficulty but not to the degree as alleged." [Tr. 95]

In addition to treatment for physical conditions, McCoy's primary care physician referred her to the Mountain Comprehensive Care Center for a mental health evaluation. [Tr. 1160]  McCoy first saw a psychiatrist in May 2017 due to "problems with depression and anxiety" exacerbated by traumatic events. [Tr. 1160]  Pratap Pothuloori, MD, determined that McCoy suffered from "depression, anxiety, nightmares, poor judgment, [and] alcohol dependence." [Tr. 1164]  He also concluded that she had difficulty interacting with others and limited ability to engage in "domestic responsibilities, leisure, work & school." [Tr. 1164]  McCoy's ultimate diagnoses—PTSD, spouse or partner violence, and severe alcohol use disorder—were confirmed at Mountain Comprehensive Care Center in February 2018. [Tr. 1164, 1196]

Following a November 2016 mental status consultative examination, William R. Rigby, Ph.D., concluded that McCoy's "mood appears depressed. . . . There are no manifestations of anxiety seen in the session." [Tr. 480] He further determined that McCoy suffers from depressive disorder and has a Global Assessment Functioning score of 65, which indicates moderate difficulty in social, occupation, or school functioning. [Tr. 482] Later examinations of the evidence add to Rigby's diagnosis. Ann Demaree, Ph.D., that McCoy had some moderate social interaction limitations and "can relate 1:1 as needed." [Tr. 49] And at the reconsideration stage, Jane Brake, Ph.D., determined that McCoy's allegations of mental limitations were "partially credible" and that she "can adapt in a setting where there is little change in routine and within her physical limitations." [Tr. 84]

ALJ Hodges determined that McCoy had the following severe impairments: right carpal tunnel syndrome, left foot fracture, arthritis, degenerative disc disease, peripheral vascular disease, headaches, depressive disorder, post-traumatic stress disorder ("PTSD"), and alcohol use disorder. [Tr. 18–19] Hodges assigned great weight to Waltrip and Rigby's opinions because they were based on an evaluation of McCoy and supported by other evidence. [Tr. 25]

After concluding that McCoy did not meet a Listing, ALJ Hodges determined that she had the residual functional capacity ("RFC") to perform some light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b). [Tr. 21] Specifically, Hodges found that McCoy could:

> [P]erform light work . . . except occasionally push/pull with bilateral lower extremities; avoid concentrated exposure to the hazards of moving machinery and unprotected heights, and vibrations; frequently handle and finger with right,

dominant hand; occasionally operate left foot controls; avoid concentrated exposure to extreme cold and wetness; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally reach overhead; frequently reach in all other directions; stand/walk four hours in an eight hour workday, 30 minutes at a time; only occasional changes in the work setting; able to perform simple, routine, and repetitive tasks; and occasional interaction with others.

[Tr. 21]

ALJ Hodges also considered the testimony presented by vocational expert Anthony T. Michael Jr. during McCoy's hearing. [Hr'g Tr. 1921] Subject to the limitations outlined by the claimant's RFC, he testified that McCoy could not perform past work and did not have transferrable skills, but that "there would be jobs at the light level." [Hr'g Tr., 1923] He also indicated that his testimony regarding overhead reaching, standing and walking limitations, lying down, and being absent or off-task "are not covered in the [Department of Labor's Dictionary of Occupational Titles]," but was "based on [his] educational background and [his] work experience." [Hr'g Tr. 1928] After considering this evidence, ALJ Hodges concluded that McCoy could not perform her past work, which was classified as light and unskilled, medium and unskilled, and medium and semi-skilled. [Tr. 25] However, she found that there were jobs existing in significant numbers in the national economy that she could perform [Tr. 26], and that McCoy was not disabled under the Act.

### III. STANDARD OF REVIEW

The Act defines "disability" as "an inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). ALJ's follow "a five-step 'sequential evaluation process'" when

determining whether a claimant is disabled under the Act. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of satisfying steps one through four, and the burden shifts to the Commissioner to satisfy the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At step one, a claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Step two requires the claimant to show that she suffers from a severe impairment or a combination of impairments that limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). For step three, if the claimant demonstrates that she has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment ("Listing"), she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d). 416.920(d). But if the claimant does not meet a Listing, the ALJ will assess and make a finding about her RFC before moving to step four. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Fourth, if the claimant has a severe impairment but the Commissioner is unable to determine the disability based on medical evaluations and current work activity, the Commissioner will review her RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

At step five, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot, the

Commissioner will find her disabled.   20 C.F.R. §§ 404.1520(g), 416.920(g).   "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision.  *Roger v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   Substantial evidence is such reasonable evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

The Court must examine the entire record, but it may not review it *de novo*, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  Rather, if substantial evidence supports the Commissioner's decision, it must be affirmed.  42 U.S.C.  § 405(g); *Bass*, 499 F.3d at 509.

## IV.  LEGAL ANALYSIS

McCoy raises two objections to the Commissioner's final decision.  Both related to the hypothetical RFC presented to the vocational expert at her hearing.  McCoy argues that: (1) the mental limitations in the RFC do not reflect all evidence deemed credible by ALJ Hodges and (2) the standing and walking limitations in the RFC preclude McCoy from engaging in light work, therefore, the vocational expert's testimony should not be accepted.  [Record No.

19-1, pp. 3, 10]  Accordingly, she takes issue with ALJ Hodges's formulation of the RFC and with her determination that other work is available in the economy.

> **A.     ALJ Hodges adequately described McCoy's mental limitations in presenting a hypothetical RFC to the vocational expert.**

The RFC presented to the vocational expert stated that McCoy should be "limited to simple, routine, and repetitive tasks with only occasional changes in work setting and occasional interaction with others." [Hr'g Tr. 1923]  In formulating this RFC, ALJ Hodges accepted the findings of three medical professionals—Brake, Demaree, and Rigby.  But McCoy argues that the final RFC should have included Demaree's opinion that she "can relate 1:1 as needed," [Tr. 49], which she argues would create a more restrictive RFC.  [Record No. 19-1, p. 11]  According to McCoy, "the hypothetical RFC that was presented to the vocational expert failed to accurately describe the claimant and the vocational expert's testimony is not based upon substantial evidence." [*Id.* at p. 12]

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets for the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec. of Health & Hum. Servs.*, 820 f.2d 777, 779 (6th Cir. 1987)).  Additionally, if "the controlling hypothetical inadequately described [the claimant's] limitations, the expert's conclusion . . . does not serve as substantial evidence . . . ." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010).

Here, McCoy argues that the hypothetical RFC inaccurately described her mental limitations because it is "less restrictive than the limitations the ALJ accepted." [Record No.

19-1, p. 15]  In response, the Commissioner argues that the "ALJ reasonable translated [the three expert opinions] into a succinct RFC, and Plaintiff has not shown how the ALJ's translation is deficient." [Record No. 22, p. 7]  McCoy's argument is unsupported by a full review of ALJ Hodge's decision and the medical evidence she considered.

Rather than ignoring Demaree's opinion, ALJ Hodges accorded it significant weight and crafted an RFC based on it and other medical opinions.  In her brief, McCoy highlights Demaree's opinion that McCoy "can relate 1:1 as needed" and argues that ALJ Hodges "was obligated to include these limitations" in the RFC.  [Record No. 19-1, p. 12]  But taken in context, that quote is just a small part of Demaree's full opinion regarding McCoy's social interaction limitations.  [Tr. 48–49]  Demaree found that McCoy was moderately limited in her ability to interact with the general public and to get along with coworkers or peers.  [Tr. 49]  She also found that she was not significantly limited in her ability to ask questions, accept instructions or criticism, and maintain socially appropriate behavior and hygiene.  [Tr. 49] With all this in mind, Demaree wrote that McCoy "will tend to avoid others" but can "relate 1:1 as needed."  [Tr. 49]

In addition to Demaree's opinion, ALJ Hodges gave significant weight to Brake's opinion and great weight to Rigby's opinion.  [Tr. 25]  After her review of the evidence, Brake opined that McCoy was moderately limited in her ability to interact with the general public, but not significantly limited in any other interactions.  [Tr. 83]  And after Rigby evaluated McCoy, he opined that she had "moderate impairment to maintain social interactions with supervisors, friends, and the public."  [Tr. 483]

After weighing these three opinions, ALJ Hodges had the duty to formulate a hypothetical RFC that adequately described McCoy's mental limitations. *Ealy*, 594 F.3d at 516; *see also* 20 C.F.R. § 416.946 (assigning ALJ responsibility for assessing RFC); 20 C.F.R. § 416.927 (addressing how medical opinions are weighed). Contrary to McCoy's assertions, Demaree's opinion is not "vastly different" from the other medical experts or the final RFC. [Record No. 19-1, p. 13] Rather, each expert opined that McCoy was moderately limited in her social interactions, and the RFC adequately describes McCoy as limited to "occasional interaction with others."

McCoy argues that the Sixth Circuit's ruling in *Ealy* controls the outcome here, but her case presents different circumstances. In *Ealy*, the ALJ credited the opinion of one expert over another. *Ealy*, 594 F.3d at 510. However, in presenting a hypothetical RFC, the ALJ failed to include a specific limitation given by that expert. *Id.* at 516–17. Accordingly, the Sixth Circuit held that "Ealy's limitations were not fully conveyed to the vocational expert." *Id.* at 516 (citations omitted). Here, ALJ Hodges credited all three expert opinions and developed an RFC consistent with their consensus that McCoy had moderate limitations in her social interactions. Unlike *Ealy*, the vocational expert was given an accurate description of McCoy's limitations, and his testimony was based on substantial evidence.

**B.     ALJ Hodges properly accepted the vocational expert's testimony and substantial evidence supports her finding that suitable work is available.**

McCoy also argues that "the ALJ erred by improperly accepting the vocational expert's testimony that failed to meet the agency's definition for light work." [Record No. 19-1, p. 4] According to McCoy, because the RFC limits her to standing and walking four hours in an

eight-hour day, 30 minutes at a time, she can only perform sedentary work and is disabled. [*Id.* at pp. 9–10]  She argues that by opining that McCoy could perform certain jobs at the light work level, despite this limitation, the vocational expert's opinion was inconsistent with the agency definition of light work.  [*Id.* at pp. 4–10]  In response, the Commissioner argues that, because the RFC and vocational expert testimony addresses only a range of light work jobs, and not all jobs at that level, the testimony was not inconsistent with the regulations.  [Record No. 22, pp. 8–9]

McCoy is correct to note that most light jobs require six hours of standing in an eight-hour workday.  *See, e.g.*, 20 C.F.R. § 404.1567(b); SSR 83-14, 1983 SSR LEXIS 33 ("The major difference between sedentary and light work is that *most* light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday."  (emphasis added)); SSR 83-10, 1983 SSR LEXIS 30 ("[A] job is in [the light work] category when it requires a good deal of walking or standing—the primary difference between sedentary and *most* light jobs. . . . The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-our workday."  (emphasis added)).

However, McCoy's argument that the RFC (and vocational expert testimony) concluded she could perform *all* light work mischaracterizes ALJ Hodge's decision.  It is clear from her written decision that ALJ Hodges concluded that McCoy could perform a range of light work, not all light work.  [Tr. 21]  Therefore, the issue became whether jobs within the light work category existed that met McCoy's unique limitations.  In that situation, ALJ Hodges was permitted to rely on a vocational expert.  *See* 20 C.F.R. § 404.1566(e).

The Sixth Circuit addressed a similar situation in *Anderson v. Commissioner of Social Security*, 406 F. App'x 32, 35 (6th Cir. 2010).  There, it held that:

> Where a claimant's RFC is between two exertional levels, such as the case here where the ALJ found that Anderson could perform a limited range of light work, the grid guidelines, which reflect only common—and not all—patterns of vocational factors, are not binding and are instead used only as an analytical framework. . . . In such a situation, a [vocational expert] is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with the claimant's limitations can perform.  *See* SSR 83-12, 1983 SSR LEXIS 30.  As long as the [vocational expert]'s testimony is in response to an accurate hypothetical, the ALJ may rely on the [vocational expert]'s testimony to find that the claimant is able to perform a significant number of jobs.

*Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (citing *Feliskey v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Here, ALJ Hodges determined McCoy's limitations and presented an accurate hypothetical to the vocational expert.  She then "asked the [vocational expert] to assume only a limited range of light work, not a full range of light work, and the [vocational expert] identified jobs" consistent with McCoy's limitations.  *Peebles v. Chater*, 1996 U.S. App. LEXIS 42593, at *18 (6th Cir. May 6, 1996).  ALJ Hodges appropriately relied on his testimony, citing his education and experience.  *Conn v. Sec. of Health & Human Servs.*, 51 F.3d 607 (6th Cir. 1995).  She then concluded that "other work exists in the national economy that accommodates [McCoy's] residual functional capacity and vocational factors (age, education, skills, etc.)."  *Walters v. Comm'r of Soc. Sec.*, 1277 F.3d 525, 529 (6th Cir. 1997).  That determination was supported by substantial evidence.

Finally, McCoy's allegation that ALJ Hodges was biased against her is also without merit.  [Record No. 19-1, pp. 8–10]  And as the Commissioner notes, courts "presume that

judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 856 (6th Cir. 2011) (citing *Rosen v. Goetz*, 410 F.3d 919, 930–31 (6th Cir. 2005)).  McCoy bears the burden of rebutting that presumption with "evidence that a risk of actual bias or prejudgment is present."  *Id.* (quoting *Navistar Int'l Transp. Corp. v. U.S. E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)). After full review of the hearing transcript, she has not met that burden here.

## V.  CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Plaintiff Angela McCoy's motion for summary judgment [Record No. 19] is **DENIED**.

2.      Defendant Commissioner Andrew Saul's motion for summary judgment [Record No. 22] is **GRANTED**.

Dated:  January 6, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky